U.S. v. AMAC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
Plaintiff,

v.

[4] **American Management and Administration Corporation (AMAC)**,
Defendant.

CRIMINAL NO. 23-148 (CVR   )

RECEIVED AND FILED
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.

Digitally signed
by Maria Luz Diaz
Date: 2023.04.13
09:44:16 -04'00'

## PLEA AGREEMENT

**TO THE HONORABLE COURT:**

The United States of America, Defendant, **American Management and Administration Corporation (AMAC)**, and Defendant's counsel, Osvaldo Carlo, Esq. and Eduardo Ferrer, Esq., pursuant to Federal Rule of Criminal Procedure 11, state that they have reached a Plea Agreement, the terms and conditions of which are as follows:

1. **Charges to which Defendant will Plead Guilty**

   Defendant agrees to waive its right to be indicted by a Grand Jury and to plead guilty to Count One of the Information, in violation of 18 U.S.C. § 666(a)(1)(A).

   > **COUNT ONE** (*Theft of Federal Funds, Title 18, United States Code, § 666 (a)(1)(A)*). *The introductory allegations are re-alleged and incorporated as though fully set forth herein. At all times relevant to this Information, Defendants, [1] WALTER PIERLUISI-ISERN, [2] EDUARDO PIERLUISI-ISERN, and [3] DAVID VELEZ-HERNANDEZ, were agents of Defendant [4] AMAC, and Defendant [4] AMAC was an agent of the PRPHA. Between in or about 2014 through*

*in or about August 2022, in the District of Puerto Rico and within the jurisdiction of this Court, the defendants, [1] WALTER PIERLUISI-ISERN, [2] EDUARDO PIERLUISI-ISERN, [3] DAVID VELEZ-HERNANDEZ, and [4] AMAC, did knowingly and intentionally embezzle, steal, and obtain by fraud, and otherwise without authority, and knowingly convert to their own use, and the use of others, property of the United States of a value in excess of $5,000 owned by, and under the care, custody and control of Defendant [4] AMAC and the PRPHA, in violation of Title 18, United States Code, Section 666(a)(1)(A). That is, Defendants, [1] WALTER PIERLUISI-ISERN, [2] EDUARDO PIERLUISI-ISERN, [3] DAVID VELEZ-HERNANDEZ, and [4] AMAC, obtained by fraud and converted the property stolen from HUD federal assistance programs for the management and operation of PHPs in Puerto Rico to their own use and the use of others an amount in excess of $3,712,000.00 U.S. dollars. Defendant [1] WALTER PIERLUISI-ISERN obtained approximately $2,035,498.86 in HUD funds earmarked as PHP Operational Funds. Defendant [2] EDUARDO PIERLUISI-ISERN obtained approximately $363,202.28 in HUD funds earmarked as PHP Operational Funds. Defendant [3] DAVID VELEZ-HERNANDEZ obtained approximately $876,639.80 in HUD funds earmarked as PHP Operational Funds.*



2. **Maximum Penalties**

Count One: The maximum statutory penalty for an organizational defendant for the offense charged in Count One of the Information, is five (5) years probation pursuant to 18 U.S.C. § 3561, and a fine of not more than $7,424,000.00 pursuant to 18 U.S.C. § 3571.

3. **Sentencing Guidelines Applicability**

Defendant understands that the sentence will be imposed by the Court in accordance with 18 U.S.C. § § 3551-86, and the United States Sentencing Guidelines (hereinafter "Guidelines"), which are advisory pursuant to the United States Supreme Court decision in *United States v. Booker*, 543 U.S. 220 (2005).

U.S. v. AMAC

### 4. Special Monetary Assessment

Defendant agrees to pay a special monetary assessment ("SMA") of one hundred dollars ($100.00) per count of conviction. The SMA will be deposited in the Crime Victim Fund, pursuant to 18 U.S.C. § 3013 (a)(2)(A).

### 5. Fines and Restitution

The Court may, pursuant to Sections 8C2.2 through 8C2.9 of the Guidelines order Defendant to pay a fine.   However, the United States will not seek payment of a fine. The Court may also impose restitution.   Defendant agrees to execute and make available, prior to sentencing, a standardized financial statement (OBD Form 500).  The United States will advocate on behalf of any identified victim, and comply with its obligations under the Mandatory Victim Restitution Act of 1996. The defendant agrees to the entry of an order of restitution in favor of the United States in the amount of **$3,712,000.00**, jointly and severably with each co-defendant.

### 6. Sentence to be Determined by the Court

Defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot make and has not made any promise or representation as to what sentence Defendant will receive. Any discussions that the parties might have had about possible sentences are not binding in any way on the Court, and do not constitute representations about what the parties will seek, or what the actual sentence will be.

U.S. v. AMAC

7. **Recommended Sentencing Guidelines Calculations and Sentencing Recommendation**

After due consideration of the relevant factors enumerated in 18 U.S.C. § 3553(a), the United States and Defendant submit that the advisory Guidelines calculations listed below apply to Defendant.    However, Defendant acknowledges that the Court is not required to accept those recommended Guidelines calculations.

    A. The parties agree that U.S.S.G. §§ 8C2.2 through 8C2.9 apply to the offense of conviction. Nonetheless, consistent with the provisions of 18 U.S.C. §§ 3553 and 3572, the parties agree to request that Defendant be sentenced to pay restitution in favor of the United States in the amount of **$3,712,000.00**, jointly and severably with any co-defendants.

8. **Waiver of Appeal**

Defendant knowingly and voluntarily agrees to waive the right to appeal the conviction, judgment and any sentence within the statutory maximum (or the manner in which that sentence was determined) on the grounds set forth in 18 U.S.C. § 3572 or on any ground whatsoever, in exchange for the concessions made by the United States in this Plea Agreement.

9. **No Further Adjustments or Departures**

The United States and Defendant agree that no further adjustments or departures to Defendant's total adjusted base offense level and no variant sentence under 18 U.S.C. § 3553—other than any explicitly provided for in this Plea Agreement—shall be

sought by Defendant. The parties agree that any request by Defendant for an adjustment or departure that is not explicitly provided for in this Plea Agreement will be considered a material breach of this Plea Agreement, and the United States will be free to ask for any sentence, either guideline or statutory.

### 10. Satisfaction with Counsel

Defendant is satisfied with counsel, Osvaldo Carlo, Esq. and Eduardo Ferrer, Esq., and asserts that counsel has rendered effective legal assistance.

### 11. Rights Surrendered by Defendant Through Guilty Plea

Defendant understands that by entering into this Plea Agreement, Defendant surrenders and waives certain rights as detailed in this agreement. Defendant understands that the rights of criminal defendants include the following:



 a. If Defendant had persisted in a plea of not guilty to the charges, Defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States and the judge agree.

 b. If a jury trial is conducted, the jury would be composed of twelve lay persons selected at random.  Defendant and Defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that Defendant is presumed innocent, that it could not convict Defendant unless, after hearing all the evidence, it was persuaded of Defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.

 c. If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately,

determine whether or not the evidence established Defendant's guilt beyond a reasonable doubt.

d. At a trial, the United States would be required to present its witnesses and other evidence against Defendant.   Defendant would be able to confront those witnesses and Defendant's attorney would be able to cross-examine them.   In turn, Defendant could present witnesses and other evidence on Defendant's own behalf. If the witnesses for Defendant would not appear voluntarily, Defendant could require their attendance through the subpoena power of the Court.

e. At a trial, Defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilt could be drawn from Defendant's refusal to testify. If Defendant desired to do so, Defendant could testify on Defendant's own behalf.

### 12. Stipulation of Facts

The accompanying Stipulation of Facts signed by Defendant is hereby incorporated into this Plea Agreement. Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect. Defendant agrees and accepts that had the matter proceeded to trial, the United States would have proven those facts beyond a reasonable doubt.

### 13. Limitations of Plea Agreement

This Plea Agreement binds only the United States Attorney's Office for the District of Puerto Rico and Defendant.   It does not bind any other federal district, state, or local authorities.

### 14. Entirety of Plea Agreement

This written agreement constitutes the complete Plea Agreement between the United States, Defendant, and Defendant's counsel.   The United States has made no

promises or representations except as set forth in writing in this Plea Agreement and denies the existence of any other terms and conditions not stated herein.

### 15. Amendments to Plea Agreement

No other promises, terms or conditions will be entered into between the parties unless they are in writing and signed by all parties.

### 16. Voluntariness of Plea Agreement

Defendant acknowledges that no threats have been made against Defendant and that Defendant is pleading guilty freely and voluntarily because Defendant is guilty.

### 17. Breach and Waiver

Defendant agrees that defendant will have breached this Plea Agreement if, after entering into this Plea Agreement, Defendant: (a) fails to perform or to fulfill completely each and every one of Defendant's obligations under this Plea Agreement; (b) engages in any criminal activity prior to sentencing; or (c) attempts to withdraw Defendant's guilty plea.  In the event of such a breach, the United States will be free from its obligation under this Plea Agreement and Defendant will not have the right to withdraw the guilty plea.  Moreover, Defendant agrees that if Defendant is in breach of the Plea Agreement, Defendant is deemed to have waived any objection to the reinstatement of any charges under the Information, Information, or complaint which may have previously been dismissed or which may have not been previously prosecuted.

### 18.  Payment of Monetary Penalties

Defendant understands and agrees that, pursuant to 18 U.S.C. §§ 3613 and 3572, all monetary penalties imposed by the Court will be due immediately and subject to immediate enforcement by the United States. Within 14 days of a request, Defendant agrees to provide all of Defendant's financial information (including, for example, balance sheets and account statements) to the United States and the Probation Office and, if requested, to participate in a pre-sentencing debtor's examination and/or complete a financial statement under penalty of perjury. If the Court imposes a schedule of payments, Defendant understands that the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. Until all monetary penalties are paid in full, Defendant agrees to be referred to the Treasury Offset Program, so that any federal payment or transfer of returned property to Defendant will be offset and applied to pay Defendant's unpaid monetary penalties. Defendant agrees to make good-faith efforts toward payment of all monetary penalties imposed by the Court.

### 19. Forfeiture Provision

Defendant agrees to waive and forgo any interests or claims over any proceeds of the illegal activity pursuant to 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461(c).

Defendant further agrees to waive all interest in any such asset in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or

federal.   Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise Defendant of this, pursuant to Rule 11(b)(1)(J), at the time Defendant's guilty plea is accepted.

Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.   Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. Defendant acknowledges that all property covered by this agreement is subject to forfeiture as proceeds of illegal conduct, giving rise to forfeiture and/or substitute assets for property otherwise subject to forfeiture.

Defendant, by agreeing to the forfeiture stated above, acknowledges that such forfeiture is not grossly disproportionate to the gravity of the offense conduct to which Defendant is pleading guilty.   Defendant agrees that the forfeiture provisions of this Plea Agreement are intended to and will survive Defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.

The forfeitability of any particular property pursuant to this agreement shall be determined as if Defendant had survived, and that determination shall be binding upon Defendant's heirs, successors and assignees until the agreed forfeiture, including any agreed money judgment, is collected in full.

### 20. Corporate Authorization

Defendant states that it is authorized to enter into this agreement. Before the date that this Plea Agreement is signed, Defendant's representative shall provide the United States with a written statement in the form of a corporate resolution certifying that Defendant is authorized to enter into and comply with all of the terms of this agreement. The corporate resolution shall certify that all corporate formalities for such authorizations have been observed. The resolution shall further certify that Walter Pierluisi-ISERN, the President and Treasurer of the defendant corporation, is authorized to take these actions. Defendant further agrees that Mr. Walter Pierluisi-ISERN shall appear on behalf of Defendant to enter the guilty plea and for imposition of the sentence in the United States District Court for the District of Puerto Rico.

### 21. Organizational Changes

Defendant shall not, through a change of name, business reorganization, sale or purchase of assets, divestiture of assets, or any similar action, seek to avoid the obligations and conditions set forth in this Plea Agreement. This Plea Agreement,

together with all of the obligations and terms hereof, shall inure to the benefit of and bind partners, assignees, successors-in-interest, or transferees of the defendant.

### 22. Discovery Waiver

Defendant waives the right to any further discovery from the United States either now or at any future time, including at sentencing. Defendant understands that by waiving discovery in this case, this includes any right it may have to any further discovery about the United States' witnesses or case, under Rule 16 (discovery and inspection) and Rule 26.2 (witness statements) of the Federal Rules of Criminal Procedure, and pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963), *Giglio v. United States,* 405 U.S. 150 (I 972), or their progeny.

W. STEPHEN MULDROW
United States Attorney

_____
Seth A. Erbe
Assistant U.S. Attorney
Chief, Financial Fraud & Public
Corruption Section
Dated:   3/30/2023

_____
Marie Christine Amy
Assistant U.S. Attorney
Dated:   3 / 30 / 20 23

_____
AMAC
Defendant
By: Walter Pierluisi-Isern
Dated:   03/30/2023

_____
Osvaldo Carlo, Esq.
Counsel for Defendant
Dated:   09/30/2023

_____
Eduardo Ferrer, Esq.
Counsel for Defendant
Dated:   03\30\2023

U.S. v. AMAC

## UNDERSTANDING OF RIGHTS

I have consulted with counsel and fully understand all of my rights as to the charges pending against me. Further, I have consulted with my attorney and fully understand my rights as to the provisions of the Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. My counsel has translated the Plea Agreement to me in the Spanish language and I have no doubts as to the contents of the agreement. I fully understand this agreement and voluntarily agree to it.

Date: 03/31/2023

AMAC
Defendant
By: Walter Pierluisi-Isern

I am the attorney for Defendant. I have fully explained Defendant's rights to Defendant with respect to the pending charges. Further, I have reviewed the applicable provisions of the Guidelines and I have fully explained to Defendant the provisions of those Guidelines that may apply in this case. I have carefully reviewed every part of this Plea Agreement with Defendant. I have translated the Plea Agreement and explained it in the Spanish language to the Defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, Defendant is entering into this Plea Agreement voluntarily, intelligently, and with full knowledge of all consequences of Defendant's plea of guilty.

Date: 03/30/2023

Osvaldo Carlo and Eduardo Ferrer, Esq.
Counsel for Defendant

## STIPULATION OF FACTS

In conjunction with the submission of the accompanying Plea Agreement in this case, the Defendant **[4] AMAC** admits that Defendant is guilty as charged in the Information and admits the following:

In support of his guilty plea, Defendant **[4] AMAC**, admits that the Puerto Rico Public Housing Administration (PRPHA) was responsible for the administration of Public Housing Projects (PHPs) in Puerto Rico. The United States Department of Housing and Urban Development (HUD) provided annual benefits in excess of $10,000 to be under the care, custody and control of the PRPHA for the operation and maintenance of PHPs in Puerto Rico (Operational Funds). The PRPHA charged HUD an administrator's fee for each occupied housing unit within a PHP. The PRPHA in turn delegated the responsibility of administering the PHPs to Management Agents (MA) who were either private companies or local municipalities. The PRPHA in turn paid a monthly fee to MAs based on the amount of occupied housing units from the PHPs managed by the MA (Management Fee).

The MAs were required to comply with all Federal and Puerto Rico statues and regulations applicable to the PRPHA as they served as representatives of the PRPHA and HUD. The MAs were thus awarded Operational Funds in excess of $10,000 each year to be under the care, custody and control of the MAs for the operation and maintenance of PHPs in Puerto Rico. The MAs were authorized and required to make the necessary purchases of goods and services to properly administer and maintain the

PHPs under their contracts using the Operational Funds and federal assistance provided to the MAs.

Defendant **[4] American Management and Administration Corporation** (**AMAC**) was incorporated on March 15, 1995, by Defendant **[1] WALTER PIERLUISI-ISERN** with offices in San Juan, PR. Defendant **[4] AMAC**'s President and Registered Agent was Defendant **[1] WALTER PIERLUISI-ISERN**. Defendant **[1] WALTER PIERLUISI-ISERN** also had a controlling interest and authority over the companies Docu-Warehouse Corp. (Docu-Warehouse), Pier Property Management, Inc. (Pier Property), and XZ Enterprises, Inc. (XZ Enterprises). The executive team at Defendant **[4] AMAC** included Defendant **[2] EDUARDO PIERLUISI-ISERN** as employee, officer and agent, and Defendant **[3] DAVID VELEZ-HERNANDEZ**, as the Director of Finance.

Defendant **[2] EDUARDO PIERLUISI-ISERN** supervised the repair and maintenance work performed at the PHPs managed by Defendant **[4] AMAC**. Defendant **[3] DAVID VELEZ-HERNANDEZ** oversaw and approved Defendant **[4] AMAC**'s purchases, purchase orders, issuing payments and checks, among other duties.

In or about the years 2008, 2011, 2015 and 2020, the PRPHA and Defendant **[4] AMAC**, through Defendant **[1] WALTER PIERLUISI-ISERN,** executed contracts, wherein **[4] AMAC** agreed to serve as the MA of certain PHPs located in the Northwest of Puerto Rico known as "Area 9." Defendant **[4] AMAC** agreed to serve

as the administrative agent for the PRPHA, to develop a management plan and operating budget, administer the plan utilizing the operational budget funded by HUD, and be responsible for the performance of all required work and services contracted related to approximately 5,017 public housing units within 12 municipalities across the Northwest of Puerto Rico.

Under the contracts, Defendant **[4] AMAC** was required not to contract for any services or goods with (a) any entity in which any shareholder, partner, principal, officer or director of Defendant **[4] AMAC** had an interest; any employee of Defendant **[4] AMAC**; any person related to Defendant **[4] AMAC** by blood or marriage, and any entity controlled by or under common control with Defendant **[4] AMAC**, unless authorized in writing by the PRPHA.

Defendants **[1] WALTER PIERLUISI-ISERN**, **[3] DAVID VELEZ-HERNANDEZ**, and **[4] AMAC**, subcontracted with FiveStar Pest Control, Inc. (FiveStar) and CoolBreeze Air Conditioning, Inc. (CoolBreeze) to provide services to the PHPs under its management. Defendants **[1] WALTER PIERLUISI-ISERN**, **[3] DAVID VELEZ-HERNANDEZ**, and **[4] AMAC** disbursed money from the Operational Funds to issue payments to FiveStar and CoolBreeze.

Defendants **[1] WALTER PIERLUISI-ISERN**, **[2] EDUARDO PIERLUISI-ISERN**, **[3] DAVID VELEZ-HERNANDEZ**, and **[4] AMAC,** agreed to issue multiple checks from FiveStar and CoolBreeze for their personal use and use of others.

Defendants **[1] WALTER PIERLUISI-ISERN**, **[3] DAVID VELEZ-**

**HERNANDEZ,** and **[4] AMAC** issued multiple checks from FiveStar and CoolBreeze to the companies Docu-Wharehouse, Pier Property and XZ Enterprises, controlled and owned by Defendant **[1] WALTER PIERLUISI-ISERN,** for the personal use and benefit of defendant **[1] WALTER PIERLUISI-ISERN,** for services not rendered.

Defendants **[1] WALTER PIERLUISI-ISERN, [2] EDUARDO PIERLUISI-ISERN, [3] DAVID VELEZ-HERNANDEZ, [4] AMAC,** and Individual A as president of FiveStar, agreed to issue multiple checks from FiveStar in the name of Person A and Person B, who were not employees or vendors for these companies, for the personal use and benefit of defendant **[2] EDUARDO PIERLUISI-ISERN.** Defendant **[2] EDUARDO PIERLUISI-ISERN** illegally signed and cashed multiple checks issued to Person A from FiveStar into a personal bank account totaling over $148,000.00. Defendant **[2] EDUARDO PIERLUISI-ISERN** illegally signed and cashed multiple checks issued to Person B from FiveStar into a personal bank account totaling over $89,449.00.

Defendants **[1] WALTER PIERLUISI-ISERN, [2] EDUARDO PIERLUISI-ISERN, [3] DAVID VELEZ-HERNANDEZ, [4] AMAC,** and Individual B as president of CoolBreeze issued multiple checks from CoolBreeze in the name of Person A for the personal use and benefit of defendant **[2] EDUARDO PIERLUISI-ISERN.** Defendant **[2] EDUARDO PIERLUISI-ISERN** illegally signed and cashed multiple checks issued to Person B from CoolBreeze into his personal bank account totaling over $87,500.00.

Individual A, as president of FiveStar, opened a personal bank account at Oriental bank to deposit checks issued in his name from FiveStar for the personal use and benefit of Defendant **[3] DAVID VELEZ-HERNANDEZ** and provided Defendant **[3] DAVID VELEZ-HERNANDEZ** with the bank account debit card.

Individual B, as president of CoolBreeze, opened a personal bank account at Oriental bank to deposit checks issued in his name from CoolBreeze for the personal use and benefit of Defendant **[3] DAVID VELEZ-HERNANDEZ** and provided Defendant **[3] DAVID VELEZ-HERNANDEZ** with the bank account debit card.

Defendant **[3] DAVID VELEZ-HERNANDEZ** and Individual A, issued multiple checks in the name of Individual A from FiveStar totaling over $363,937.00 for services he did not render.

Defendant **[3] DAVID VELEZ-HERNANDEZ** and Individual B issued multiple checks to Individual B from CoolBreeze totaling over $73,199.00 for services he did not render.

Defendant **[3] DAVID VELEZ-HERNANDEZ** made personal purchases and ATM withdrawals using the debit cards from Oriental Bank issued to Individual A and Individual B totaling over $876,639.00.

Between in or about 2014 through in or about August 2022, Defendants **[1] WALTER PIERLUISI-ISERN, [2] EDUARDO PIERLUISI-ISERN, [3] DAVID VELEZ-HERNANDEZ,** and **[4] AMAC**, while being agents of Defendant **[4] AMAC** and the PRPHA, knowingly and intentionally embezzled, stole, and obtained by fraud,

and otherwise without authority, and knowingly converted to their own use, and the use of others, property of the United States of a value in excess of $5,000 owned by, and under the care, custody and control of Defendant **[4] AMAC** and the PRPHA, that is, Operational Funds through payments from FiveStar and CoolBreeze, without written authorization from the PRPHA, for services not rendered, totaling over $3,712,000.00.

Defendants **[1] WALTER PIERLUISI-ISERN, [2] EDUARDO PIERLUISI-ISERN, [3] DAVID VELEZ-HERNANDEZ,** and **[4] AMAC,** electronically submitted and caused to be submitted to HUD through the Yardi System multiple inflated invoices and false certifications for services rendered by FiveStar and CoolBreeze to obtain funds from the Operational Fund for their personal use and benefit.

Defendants **[1] WALTER PIERLUISI-ISERN, [2] EDUARDO PIERLUISI-ISERN, [3] DAVID VELEZ-HERNANDEZ,** and **[4] AMAC** obtained by fraud and converted the property stolen from HUD federal assistance programs for the management and operation of PHPs in Puerto Rico, to their own use and the use of others a total amount of $3,712,000.00.

Had this matter proceeded to trial, the United States would have presented evidence through the testimony of witnesses as well as physical evidence and

U.S. v. AMAC

documentary  evidence,  which  would  have  proven  beyond  a  reasonable  doubt

Defendant's guilt as charged in Count One of the Information.

_____
Marie Christine Amy
Assistant U.S. Attorney
Dated:    3/30/2023

_____
AMAC
Defendant
By: Walter Pierluisi Isern
Dated:    03/30/2023

_____
Osvaldo Carlo, Esq.
Counsel for Defendant
Dated:    03/30/2023

_____
Eduardo Ferrer, Esq.
Counsel for Defendant
Dated:    03/30/2023